

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 11, 2024

**BY ECF and EMAIL**

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl St.
New York, New York 10007

      Re:    *United States v. Moshe Rosenfeld*, 23 Cr. 65 (CM)

Dear Judge McMahon:

      The Government respectfully submits this letter in connection with the sentencing of defendant Moshe Rosenfeld ("Rosenfeld," or the "defendant"), scheduled for Thursday, July 18, 2024, at 11:00 a.m. Moshe Rosenfeld submitted multiple fraudulent Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program ("EIDL") loan applications containing false information about companies that had no real business or employees, seeking to fraudulently obtain more than $1.4 million in loan proceeds and resulting in losses to the U.S. Small Business Administration ("SBA") of more than $300,000. The parties stipulated to a Guidelines sentencing range of 21 to 27 months' imprisonment (the "Stipulated Guidelines Range"), based on an offense level of 16 and a Criminal History Category of I. The Probation Office calculates an identical Guidelines range in the Presentence Investigation Report, and recommends a below-Guidelines sentence of 14 months' imprisonment. The defendant is seeking a further variance to a below-Guidelines sentence of 366 days' imprisonment. The Government believes that a sentence within the Stipulated Guidelines Range would be sufficient but not greater than necessary in consideration of the seriousness of the offense and the need for just punishment and adequate deterrence.

## Offense Conduct

      Between May and September 2020, Rosenfeld participated in a conspiracy to fraudulently apply for PPP and EIDL loans that were being made available to qualifying small businesses for job retention and other business expenses during the COVID pandemic. (PSR ¶¶ 9-17). At least six fraudulent loan applications were submitted in the defendant's name, for his purported businesses: (1) two EIDL loans that were approved and resulted in disbursements totaling $310,000 (PSR ¶ 27); (2) one PPP loan application for $708,930, which was not approved (PSR ¶¶ 22-25, 27), and (3) three EIDL loans, for $150,000 each, which were not approved (PSR ¶ 27). The disbursed EIDL funds were sent to bank accounts controlled by Rosenfeld. (PSR ¶ 39).

      In the loan applications, Rosenfeld and his co-conspirator, Zvi Zigelman, falsely represented that the above-referenced businesses had dozens of employees, and that the funds

would be used for payroll or other legitimate business expenses. (PSR ¶ 16). In fact, these businesses were all fictitious, with no employees and no legitimate business. In addition, to support the false claims made in the USA DIP PPP application, Rosenfeld and Zigelman submitted fraudulent, undated IRS forms which stated that the companies had paid their employees salaries during fiscal year 2019. (PSR ¶ 19). The EIDL applications also included fake EINs for Rosenfeld's purported businesses. (PSR ¶ 37).

## Procedural History

The defendant was arrested on October 23, 2022, and released on a $250,000 bond. On February 20, 2024, the defendant pled guilty before Your Honor to Count One of the Indictment, which charged him with participating in conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. Pursuant to the parties' plea agreement, based on an offense level of 16 – reflecting a 14-level enhancement because the intended loss exceeded $550,000 but was less than $1,500,000, and a two-level downward adjustment pursuant to U.S.S.G. § 4C1.1 because the defendant has zero criminal history points and otherwise meets the requirements of § 4C1.1 – and a criminal history category of I, the Stipulated Guidelines Range is 21 to 27 months' imprisonment. The Probation Office's guidelines calculation is in accord with the plea agreement.

The Probation Office recommends a variance sentence of 14 months' imprisonment and two years' supervised release. (PSR 28). In support of its recommendation, the Probation Office noted Rosenfeld's lack of other criminal history, his compliance with the conditions of his pretrial supervision, and the nonviolent nature of the offense, but stated that Rosenfeld's offense cannot be "attributed to a single lapse in judgment" as he "filed multiple fraudulent loan applications for millions of dollars in government funds to which he had zero legitimate claim" over the course of multiple months. (PSR at 28). The Probation Office further explained that "general deterrence is also paramount" because of the susceptibility of emergency government relief programs to fraud.

## Status of Moshe Rosenfeld's Co-Defendants

In February 2023, Zvi Zigelman pled guilty to conspiracy to commit bank fraud, pursuant to 18 U.S.C. § 371. His Guidelines range was 18 to 24 months' imprisonment, based on an offense level of 15 and a Criminal History Category of I. On February 22, 2024, this Court sentenced Zigelman to 18 months' imprisonment. As reflected in the Presentence Investigation Report, the Government believes that Rosenfeld is similarly situated to Zigelman in terms of culpability. (PSR ¶ 38). In particular, Rosenfeld and Zigelman were responsible for relatively similar intended losses, and neither defendant had any prior criminal history.

One difference between Rosenfeld and Zigelman is that Zigelman accepted responsibility shortly after being arrested pursuant to a complaint and pled guilty without requiring the Government to present the case to a grand jury, produce discovery, or otherwise invest further resources in the matter. In acknowledgment of his early acceptance of responsibility, the Government agreed that Zigelman could plead guilty to bank fraud conspiracy pursuant to 18 U.S.C. § 371, which has a five-year statutory maximum sentence and thus resulted in a Guidelines range that was one offense level lower than if Zigelman had pled guilty to bank fraud conspiracy pursuant to 18 U.S.C. § 1349. Zigelman and Rosenfeld's Guidelines calculations are otherwise identical.

**Objections to the Presentence Investigation Report**

Rosenfeld raises a number of objections to the Presentence Investigation Report based on his contentions that the fraudulent loan applications were all submitted by Zigelman, and that Zigelman submitted loans "under Rosenfeld's name that Rosenfeld was not aware of." (Dkt. 89 at 2-3). While Rosenfeld does not appear to dispute that he knowingly participated in the bank fraud conspiracy, that he was aware of the two approved fraudulent loans, and that, at a minimum, the other fraudulent loans submitted in his name were reasonably foreseeable to him, he Rosenfeld appears to argue that he was only specifically aware of the two EIDL loans submitted in his name that resulted in the disbursement of approximately $310,000 in funds. (*See* Dkt. 89 at 2). The evidence, however, shows that Rosenfeld was aware of and involved in additional fraudulent loan applications, consistent with the Guidelines range stipulated to in the parties' plea agreement.

*First*, Rosenfeld acknowledges that he provided "a copy of [his] license and basic information about . . . business entitit[ies] in order to secure [the] loan[s]." *Id.* at 3. This on its own suggests that Rosenfeld was well aware of even the rejected fraudulent loan applications that were submitted in his name. The rejected applications were generally made in the names of different entities than the approved loan applications (PSR ¶ 27), and it is undisputed that none of those businesses had any real employees or ongoing operations (PSR ¶ 16). It defies belief that Rosenfeld thought he was engaged in legitimate activity when he provided information about defunct businesses to be used in loan applications for emergency COVID-relief funds.

*Second*, the evidence further shows that contact information for Rosenfeld, including his address, phone number, and/or email addresses that he used, was included in each of the Rosenfeld loan applications. Rosenfeld's cellphone number – the number assigned to the cellphone that was seized from him at the time of his arrest – was listed in three of the rejected EIDL loan applications and the approved EIDL loan application for Rose 123 Consulting. That cellphone number was subscribed to Isreal Gifts Store Inc., one of Rosenfeld's entities, at an address in Brooklyn that was listed all of the fraudulent loan applications Rosenfeld submitted. Moreover, chat messages recovered from Rosenfeld's cellphone showed that, on May 21, 2020, shortly before the first of the relevant fraudulent loan applications was submitted, Rosenfeld provided Zigelman with an email address that was then listed in the EIDL application for Rose 123 Consulting (which was approved), and the PPP application for Rose 123 Consulting (which was rejected). Finally, emails records from Rosenfeld's cellphone further show that, in July and August 2020, Rosenfeld received multiple emails from the SBA regarding the approved EIDL loan for MRH26 LLC. In sum, the evidence shows that Rosenfeld was not merely the name on these fraudulent loan applications: he was the point of contact for them, and would have received communications or correspondence sent out regarding the applications, including the four rejected fraudulent loan applications.

Rosenfeld also makes the self-serving assertion that the loan applications were all submitted by Zigelman, not him. In doing so, he appears to rely on the fact that the applications were all submitted from the same IP address, which he suggests was associated with Zigelman's home. (*See* Dkt. 89 at 3). While the Government agrees that the loan applications were all submitted from the same IP address, that IP address is subscribed to a company located at an address in Borough Park, Brooklyn that is, to the Government's knowledge, neither Rosenfeld's nor Zigelman's address.

For all of the foregoing reasons, the Government believes that the evidence shows that Rosenfeld was aware of and involved in all of the fraudulent loan applications that were being submitted in his name, that the Presentence Investigation Report is accurate in its current form, and the Rosenfeld's objections to the factual recitations in the offense conduct should be rejected.

## Discussion

### I.   Applicable Law

As the Court is well aware, the Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2). To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (quoting *Gall*, 552 U.S. at 50).

### II.   A Guidelines Sentence is Warranted

The Government respectfully submits that a sentence within the Stipulated Guidelines Range would be sufficient but not greater than necessary in this case. A sentence within that range would appropriately reflect the nature and circumstances of the offense, promote respect for the law, and provide for adequate general and specific deterrence.

As an initial matter, a meaningful sentence of imprisonment is warranted to reflect the serious nature of the offense. The defendant attempted to obtain more than $1.46 million in government funds to which he had no legitimate claim. This offense was particularly serious because, as the Probation Office points out, emergency government relief programs are particularly susceptible to fraud due the nature of the programs – specifically, the more limited due diligence conducted so that the funds can be disbursed on an expedited basis. And the funds were earmarked for a particularly important purpose, sustaining legitimate small business during the dire economic effects that were caused by the COVID-19 pandemic. The defendant's conduct, moreover, was no one-off mistake or aberration. He submitted at least six fraudulent applications that included falsified documents and false claims, in the names of at least five different sham businesses, over a period of approximately three months between June 2020 and September 2020.

A sentence within the Adjusted Guidelines Range is also warranted to promote respect for the law and to provide for adequate general deterrence. Although Rosenfeld has no prior criminal

history, as noted above, he was involved in the instant offense conduct for a period of several months. A meaningful sentence of imprisonment is thus necessary to ensure that that the defendant comprehends the seriousness of his actions. More importantly, a meaningful sentence of imprisonment is necessary to send a message to others that there will be serious consequences for defrauding emergency government relief programs like PPP and EIDL. This is particularly given that there will inevitably be need for future similar relief programs in times of future emergency. The need for adequate general deterrence thus weighs strongly in favor of a sentence within the Adjusted Guidelines Range.

Rosenfeld has requested a below-Guidelines sentence of 366 days. The Government believes that this would be inadequate, and that Rosenfeld's arguments in support of that sentence suggest that while he has admitted to the core conduct involved in the offense he continues to minimize aspects of his involvement. In particular, Rosenfeld argues that he played a "relatively small role in the scheme," and that the plea agreement "does not accurately reflect [his] conduct" because Zigelman submitted loans "under Rosenfeld's name that Rosenfeld was not aware of."[1] For the reasons discussed above with respect to Rosenfeld's objections to the Presentence Investigation Report, the Government believes this is inaccurate and erroneously minimizes Rosenfeld's role, awareness of, and participation in the scheme.

In support of his request for a downward variance, Rosenfeld also points to his lack of criminal history, ▮▮▮▮▮▮ and health issues. The Government does not dispute that these are mitigating factors that the Court can and should consider in imposing an appropriate sentence, The cannot, however, excuse the defendant's conduct. They are insufficient to justify a below-Guidelines sentence in light of the number of fraudulent applications Rosenfeld submitted, his disregard for the impact his actions would have on a critical Government program, the significant loss he attempted to cause, and his continued refusal to fully accept responsibility for his conduct.

---

[1] Rosenfeld also states that he "has taken responsibility for his actions" "[s]tarting at the time of his arrest at JFK airport nearly two years ago." (Dkt. 89 at 1). That is inaccurate. Rosenfeld did not accept responsibility in any meaningful way until he entered his guilty plea in February 2024, approximately sixteen months after he was arrested. He certainly did not admit that he had been involved in submitting fraudulent loan applications, or accept responsibility for that conduct, during his lengthy post-arrest interview at JFK airport.

**Conclusion**

For the foregoing reasons, the Court should impose a sentence within the Adjusted Guidelines Range of 21 to 27 months' imprisonment, along with forfeiture and restitution in the amount of $310,000.[2]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Emily Deininger
Assistant United States Attorney
(212) 637-2472

Cc: Defense counsel (by ECF and email)

---

[2] The Government anticipates submitting proposed orders for forfeiture and restitution in advance of the sentencing proceedings.